UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 8:24-cr-236-VMC-SPF

JAMES ROBERTS and
GREGORY DAVIS

**UNITED STATES' TRIAL BRIEF AND MEMORANDUM OF LAW
CONCERNING POTENTIAL LEGAL ISSUES**

In anticipation of potential legal issues that may arise, the United States submits

the following trial brief setting forth the relevant law as to the presentation of summary

evidence under Federal Rules of Evidence 611 and 1006, the admissibility of certain

uncharged evidence, and the admissibility of coconspirator statements.

## Factual Background

The defendants were charged by indictment on May 23, 2024. Doc. 1. The

indictment charges one count of conspiracy to commit wire fraud, pursuant to 18

U.S.C. § 1349, and seven counts of substantive wire fraud, pursuant to 18 U.S.C.

§ 1343. The defendants are charged jointly in each count except for count seven for

which only Roberts is charged.

The details of the underlying case are extensive, and the investigation lasted

multiple years. In a nutshell, the evidence establishes that over the course of at least

six years, between 2018 to 2024, the defendants conspired together with other

"middlemen" to locate victims with access to large amounts of funds for investing.[1] These middlemen were able to establish the victims' trust and would recommend investment with Roberts and Davis. Believing in the defendants' expertise in complicated financial matters, and the assurance from the defendants that their funds were insured, the victims would wire their funds to accounts controlled by Davis or another escrow account as directed by the defendants. Having received the funds, the defendants proceeded to transfer the money to numerous other accounts and to themselves. The money would be used for all sorts of expenses, including food, groceries, entertainment, taxes, payoffs to middlemen, and various other day-to-day expenses. The investigation has revealed little to no actual investment of the victim funds at all.

Roberts and Davis operated under two companies to maintain their scheme: Monex Assurance Group and Aegis Financial or Aegis Financial Group, as variably referred to in email communications and financial records that will be presented in evidence. The defendants maintained business accounts (Roberts with Monex and Davis with Aegis) through which funds were received from victims and filtered to other coconspirators and themselves. Over time, some of the victims who became frustrated with their lack of returns and constant excuses from the defendants would receive a repayment for their initial investment, whether in total or only a portion.

---

[1] The FBI's investigation into Roberts and Davis stretches back many more years before 2018 and to multiple other victims, but the government's presentation of the case will be limited to this time period.

However, these repayments were always from other victim investor funds, and some victims never received any payment at all. In sum, the defendants ran a "Ponzi" scheme, which they were able to maintain for years by deceiving victims into believing in their financial expertise and by pacifying certain victims who were loudest and most persistent about receiving back their investments, while constantly delaying or ignoring others who were eventually contacted by the FBI.

FBI Special Agent John Herman and FBI Forensic Accountant Gianine Lorie have subpoenaed and reviewed voluminous financial records corresponding to the initial investments of five victims (among others) and the subsequent transfer and concealment of those funds by the defendants. At trial, the government intends to present summary exhibits (flow charts and spreadsheets) that summarize the financial data, along with corroborating testimony from the victims. The following memorandum of law presents an analysis of several potential legal issues that may arise during the trial, and for which the government wishes to provide the Court in hopes of simplifying and expediting any time spent on legal argument.

**<u>Memorandum of Law</u>**

**I.      Summary Charts of the Defendants' Financial Records**

As described above, much of the evidence in this case is derived from voluminous financial records. Those records have been provided by financial institutions in various ways and with varying degrees of difficulty to organize. The records contain account holder information, monthly statements, wire transfer spreadsheets, and certifications associated with each account. To assist in the jury's

3

understanding of the case and to expedite the presentation of evidence, the government intends to introduce summary charts condensing the voluminous content of these materials. Such charts will save time at trial by avoiding lengthy and extensive presentation of the voluminous records to the jury.

The government has provided these charts in discovery along with all the underlying records. The government has organized its exhibit list by victim, with the first exhibit in each grouping (101, 201, 301, etc.) being the summary chart (excel spreadsheets containing an initial flowchart followed by tabs with the relevant and corresponding data). The rest of the exhibits are the underlying financial records corresponding to the chart, and the other exhibits associated with each victim. At trial, the government intends to introduce the financial records via Federal Rule of Evidence 803(6) and 902(11) and/or (13) (*see* Doc. 111 and 120—notice of intent to rely on records of regularly conducted activity and supplemental notice), and the summary charts via Fed. R. Evid. 1006.

### A.    Summary Charts Are Admissible Under Fed. R. Evid. 1006

The law recognizes that the contents of voluminous writings, recordings, or photographs that cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. Specifically, Federal Rule of Evidence 1006 provides:

4

> (a) Summaries of Voluminous Materials Admissible as Evidence. The court may admit as evidence a summary, chart, or calculation offered to prove the content of voluminous admissible writings, recordings, or photographs that cannot be conveniently examined in court, whether or not they have been introduced into evidence.

In short, for a summary chart to be admissible, the underlying documents must be voluminous, making in-court examination inconvenient. *United States v. Stephens*, 779 F.2d 232, 238-239 (5th Cir. 1985) (finding no error in trial court's admission of charts tracing loan proceeds in fraud case); *United States v. Scales*, 594 F.2d 558, 562 (6th Cir. 1979) (no error in trial court's admission of chart summarizing numerous other exhibits in evidence).

As to the second factor, Rule 1006 does not require that "it be literally impossible to examine the underlying records" in court before a summary chart may be introduced. *Scales,* 594 F.2d at 562. Moreover, simply because the underlying documents on which the summary charts are based are already in evidence does not mean that those documents can be conveniently examined in court, such that a summary chart is not needed or inadmissible as substantive evidence. *See United States v. Ford*, 784 F.3d 1386, 1395 (11th Cir. 2015) (affirming the admission of summary charts that presented "bare facts" of IRS tax return and banking account information from underlying records, which had also been admitted under Rule 803(6)); *United States v. Francis*, 131 F.3d 1452, 1457–58 (11th Cir. 1997) (rejecting challenge to admission of Rule 1006 summaries of intercepted phone calls in part because the underlying calls and transcripts were admitted into evidence); *United States v. Atchley*,

699 F.2d 1055, 1058–59 (11th Cir. 1983) (affirming admission under Rule 1006 of chart reflecting telephone toll records, which had themselves been introduced under Rule 803(6)).  The practical test when assessing the admissibility of summary evidence is whether it is "helpful to the jury's understanding" of the case.  *United States v. Harmas*, 974 F.2d 1262, 1269 (11th Cir. 1992).

> **B.     The United States Will Introduce Summary Charts Based on Admissible Evidence That Is Voluminous and Not Convenient for In-Court Examination**

The summary charts that the United States intends to admit satisfy all of Fed. R. Evid. 1006 requirements. First, the pertinent evidence incorporated into the summary charts, namely, the defendants' financial transactions. *United States v. Aubery,* 800 F.3d 1115, 11130 (9th Cir. 2015) ("Multiple bankers' boxes of bank statements constitute the type of materials anticipated by Rule 1006"); *United States, Evans,* 910 F.2d 790, 799 (11th Cir. 1990) (court affirmed the use of charts summarizing the defendant's finances); *United States v. Andrew,* 606 F.2d 549, 550 (5th Cir. 1979) (court permitted the use of charts summarizing banking transactions). In this case, the underlying documents that the summary charts are based upon are admissible. The financial documents consist of bank records, which generally are admissible under Fed. R. Evid. 803(6), 902(11), and/or 902(13).

Second, the materials on which the charts are based have been made available to defense counsel in discovery via electronic format. *United States v. Lewis,* 594 F.3d 1270, 1282 (10th Cir. 2010) (disclosure obligation under the rule requires disclosure of the underlying documents, not the government's database that is used to analyze the

documents or the government's worksheets.) They were also provided to defense prior to trial in the form of exhibits.

Third, the admissible materials on which the summary charts are based are voluminous. For instance, the government obtained financial records from multiple financial institutions relating to the defendants and their various entities. These records are relevant to show the defendants' financial motive, plan, design, and scheme. The financial documents acquired are more than a thousand pages in length (not including any records that were provided by the institutions in the form of spreadsheets) and not convenient for an in-court examination by the jury. However, these records can be summarized in only a few summary charts to show the flow of money into the multiple bank accounts during the relevant period charged in the Indictment.

Fourth, the financial records cannot be conveniently examined in court because of their voluminous nature and the length of time it would take the jury to examine the hundreds of pages of financial documents to reach a conclusion. Meanwhile, other documents are lengthy and contain numerous data points that would be inconvenient to summarize in court.

Moreover, the summary charts that the government will introduce will serve Fed. R. Evid. 1006's dual purpose of aiding the jury and expediting the presentation of evidence at trial. The summary charts in this case will provide the jury with an understanding of the defendants' financial motive, plan, and design to conceal significant amounts of cash or funds received from their victims during the period of

7

the conspiracy. It will also serve to aid the jury in determining the defendants' knowledge and criminal intent.

Summary exhibits, such as those the government proposes to introduce into evidence, have long been recognized as an appropriate means of clarifying a complicated or document-intensive case for the jury. The summarized evidence has been provided to the defense and the witnesses will be available for cross-examination. Moreover, the summary exhibits will serve to organize and clarify the government's presentation by explaining the financial proceeds that flowed to the defendants through their various entities to conceal their Ponzi scheme. The use and admission of summary exhibits at trial is thus appropriate.

### C. A Witness Will Testify for the United States as to the Preparation and Creation of the Summary Charts

In this case, the government will present a summary witness who has prepared the charts summarizing voluminous documentary evidence, namely, financial institution records, to show the flow of money. Forensic Accountant Lorie, who prepared the summary charts, will testify at trial about their creation. But even so, the law accepts that a witness who supervised a summary chart's preparation may lay the foundation for its admissibility. *Scales*, 594 F.2d at 558. Additionally, courts recognize that "[i]t is not necessary…that every person who assisted in the preparation of the original records or the summaries be brought to the witness stand." *Diamond Shamrock Corp. v. Lumbermens Mutual Casualty Co.,* 466 F.2d 722, 727 (7th Cir. 1972); *see also Lemire,* 720 F.2d at 1349 (fact that non-expert summary witness "did not prepare

summary charts in no way hampered defendants' ability to cross-examine him and did not prejudice defense.").

Courts recognize that a summary chart must be accurate. That is, it must fairly and accurately reflect the contents of the documents or testimony upon which it is based. *United States v. Conlin*, 551 F.2d 534, 538-39 (2d Cir. 1977). It may even reflect certain assumptions so long as evidence already before the jury supports those assumptions. *Smyth*, 556 F.2d at 1185. Some captions or headings that have been upheld include "Total Net Unreported Income," *United States v. Lacob,* 416 F.2d 756, 762 (7th Cir. 1969); "Amounts Not Reported on Taxable Gains," *United States v. Diez,* 515 F.2d 892, 905 (5th Cir. 1975); and "Falsified Data." *Smyth,* 5556 F.2d at 1185. Courts accept these assumptions "so long as supporting evidence has been presented previously to the jury…and where the court has made it clear that the ultimate decision should be made by the jury as to what weight should be given to the evidence." *United States v. Francis,* 131 F.3d 1452, 1458 (11th Cir. 1997) (*quoting United States v. Means,* 695 F.2d 811, 817 (5th Cir. 1983)).   There is no requirement that a prosecution summary chart include the defendant's version of the facts.  *United States v. Montilla Ambrosiani*, 610 F.2d 65, 68 n.2 (1st Cir. 1979).

However, the Court "must also make it clear to the jury they are to decide what weight to give to the evidence. Additionally, where the defendant 'has the opportunity to cross-examine a witness concerning the disputed issue and to present its own version of the case, the likelihood of any error in admitting summary evidence diminishes.'"

*United States v. Scott*, 427 Fed. App'x. 869, 871 (11th Cir. 2011) (quoting *United States v. Richardson*, 233 F.3d 1285, 1294 (11th Cir. 2000)).

### D.    Summary Evidence is Admissible under Federal Rule of Evidence 611(a)

Federal Rule of Evidence 611(a) permits a court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." *United States v. Poschwatta,* 829 F.2d 1477, 1481 (9th Cir. 1987). This rule gives the Court broad discretion in controlling the admission of evidence to make the "presentation effective for the ascertainment of the truth, [and] avoid needless consumption of time." *United States v. Baker*, 10 F.3d 1374, 1412 (9th Cir. 1993); *United States v. Paulino*, 935 F.2d 739, 752-54 (6th Cir. 1991).

Hence, under Federal Rules of Evidence 611(a) and 1006, courts routinely admit into evidence summary charts that organize other evidence and aid the jury's understanding, as long as the underlying evidence is admissible, has been made available to the adverse party, and a witness with knowledge of the preparation of the chart or summary is available for cross-examination. *See United States v. Gardner,* 611 F.2d 770, 776 (9th Cir. 1980); *Tamarin v. Adam Caterers, Inc.,* 13 F.3d 51, 53 (2nd Cir. 1993); *United States v. Caswell,* 825 F.2d 1228, 1235-36 (8th Cir. 1989). Because all of these factors are satisfied here, the government should be allowed to admit the summary charts in its case-in-chief.

10

**II.    The United States provided notice of potential Fed. R. Evid. 404(b) evidence to the defendants, but the evidence is intrinsic and does not fall under Rule 404(b)**

The government anticipates presenting the testimony of either four or five victims in this case. Each of the victims invested funds with the defendants, and three of them were paid back in part or in whole. The facts surrounding each of the victim investors are similar: someone they trusted introduced them to the defendants or to a middleman for the defendants; the victims invested because they believed they were relying on professional financial experts; the defendants used their money for anything but investments; the subsequent transfers of the victim funds go through similar accounts and to similar individuals.

The indictment charges the defendants with a conspiracy beginning "from an unknown date at least as early as in or about June 2019." Doc. 1. This date was used because the evidence related to one of the victims, Dana Drew, provides the simplest proof of the conspiracy. The substantive counts all relate to transactions with Drew funds or emails by the defendants to Drew. Only two of the five victims invested with the defendants prior to June 2019: Farid Khormoji (a citizen of the United Kingdom) invested his funds (approximately $384,000) in November 2018, and Dean Whibley (a citizen of Canada) invested his funds in January and February 2019 (approximately $4.25 million). The rest of the victims invested during the time period alleged in the indictment.

However, Khormoji and Whibley are both integral to the government's case. Aside from the fact their investments take place only months prior to June 2019 and

11

involve similar facts to the other victims, the facts surrounding Khormoji's interaction with the defendants complete the theory of the government's case. Khormoji is paid back by the defendants using Drew and Whibley's funds.[2] In other words, this return of funds helps prove the Ponzi scheme because a vital part of the ongoing scheme is to pay back certain victims using the funds of others. And the evidence relating to Drew's funds and how it was used cannot be explained without reference to both Khormoji and Whibley funds. Simply put, the government cannot present the Ponzi scheme without the evidence surrounding the Khormoji and Whibley funds and interactions with the defendants.

But since Khormoji and Whibley technically invested with the defendants prior to June 2019, the government notified counsel for the defendants of its intent to present potential Rule 404(b) evidence on June 8, 2022, in compliance with the Court's pretrial order.[3] Doc. 37. This notice was provided only as a safety net, because the government submits that the Khormoji and Whibley evidence is direct evidence of the charged conspiracy, but if the Court finds otherwise, then the government submits that it is at least intrinsic.

The Eleventh Circuit has repeatedly held that "evidence of uncharged conduct that is part of the same scheme or series of transactions and uses the same modus operandi as the charged offenses is admissible as intrinsic evidence outside the scope

---

[2] This also necessarily means that Whibley's funds were still being used in furtherance of the conspiracy during the time period charged in the indictment.

[3] The notice provided to defense is attached to this brief as Attachment A.

of Rule 404(b)." *United States v. Ford*, 784 F.3d 1386, 1394 (11th Cir. 2015) (internal

citations omitted); *see also United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998)

("Evidence, not part of the crime charged but pertaining to the chain of events

explaining the context, motive and set-up of the crime, is properly admitted if linked

in time and circumstances with the charged crime, or forms an integral and natural

part of an account of the crime, or is necessary to complete the story of the crime for

the jury."). Therefore, evidence of criminal activity other than the offense charged is

not extrinsic and falls outside the scope of Rule 404(b) if the evidence is: "(1) an

uncharged offense which arose from the same transaction or series of transactions as

the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably

intertwined with the evidence regarding the charged offense." *United States v. Edouard*,

485 F.3d 1324, 1344 (11th Cir. 2007).

In *United States v. Muscatell*, 42 F.3d 627, 630–31 (11th Cir. 1995), the Eleventh

Circuit considered evidence of acts the defendants had alleged were extrinsic which

had occurred "mere months before and subsequent to the charged activity." The Court

stated:

We believe that the challenged testimony was properly admissible as intrinsic evidence of the same series of transactions as the charged offenses. The charged offenses were not isolated acts, but rather, were part of a series of transactions involving the same principal actors, in the same roles, employing the same modus operandi. Each transaction involved the purchase of quadriplex residential rental property through a Bower-headed flip corporation, resale at inflated prices through Muscatell acting as the real estate broker and Slater acting as the mortgage broker, large nondisclosed buyer rebates, fraudulent loan applications, undisclosed rent subsidies, artificially inflated appraisals, and inflated sales commissions paid to Muscatell. The only variables seem to have been the location of the rental

13

quadriplexes, the identity of the buyers, and the switch from Palladino to Sonrisa Bay as the flip corporation.

Muscatell and Bower argue that the challenged evidence is necessarily extrinsic because it occurred either prior to or subsequent to the charged offenses. We find the Fifth Circuit's decision in *United States v. Dula,* 989 F.2d 772 (5th Cir.), *cert. denied,* 510 U.S. 859, 114 S.Ct. 172, 126 L.Ed.2d 131 (1993), instructive. In *Dula,* the founder and the president of a corporation that supplied aerospace engineering materials were each indicted on charges of wire fraud, mail fraud, and false statements as part of an ongoing scheme to defraud their customers by substituting inferior products that failed to meet buyer specifications. The defendants objected to the testimony of a former employee regarding a prior uncharged transaction in which the corporation unsuccessfully attempted to pass nonconforming, inferior goods onto a buyer. *Id.* at 777. The court determined that the prior uncharged transaction was intrinsic evidence arising out of the same series of transactions as the charged offense.

The defendants were charged with conducting a continuing scheme to defraud, characterized by the substitution of products, and it was necessary for the government to prove that the defendants had intentionally devised a scheme and artifice to defraud. In developing proof of intent and motive, the prosecution may offer all of the surrounding circumstances that were relevant. *Id.*

In this case, Muscatell and Bower were charged with conducting a continuing scheme to defraud, characterized by land flip transactions, inflated appraisals, buyer-rebates, and fraudulent loan applications. Here, it was necessary for the government to prove that the defendants intentionally devised a scheme and artifice to defraud. "[O]ther transactions connected with the offenses charged have long been used to show a general pattern, the necessary criminal intent, or the guilty knowledge of the defendant." *Id.* Consequently, we conclude that the challenged testimony was intrinsic to the crimes charged. *See United States v. Montes–Cardenas,* 746 F.2d 771 (11th Cir.1984) (the importation of cocaine was intrinsic as part of the same series of transactions as the charged offense of conspiracy to distribute cocaine). *Id.*

The court also ruled that the defendants' objections pursuant to Fed. R. Evid. 403 were

properly rejected. *Id.*

At the very least, the Khormoji and Whibley evidence is intrinsic. The

government cannot show direct evidence of a Ponzi scheme without Khormoji's

testimony that he was paid back for his investment in connection with the financial

14

records in this case, which prove he was paid back using Drew and Whibley funds. The defendants paid Khormoji back through his attorney, so he will have to identify his attorney in the summary charts and confirm that his attorney provided his money back. That testimony, in combination with testimony about the financial evidence and the flow of Drew and Whibley's money back to Khormoji, completes the theory of the government's case.

## III.    The United States intends to introduce evidence of coconspirator statements

The government intends to present statements of coconspirators during the course of the trial. The evidence will show the defendants used multiple middlemen to conduct their scheme. Payments to these middlemen will be shown in the financial records related to the victims. Several of the middlemen are repeated among the victims, including Robert Ramos, Steve Berlin, and Alan Hanke. The victims will have to testify about their conversations and interactions with these middlemen who encouraged them to invest with the defendants to explain the background of how the defendants came to possess their funds. The government submits that such statements qualify as coconspirator statements pursuant to Fed. R. Evid. 801(d)(2)(E) and are therefore admissible as non-hearsay.

To offer a coconspirator statement pursuant to Rule 801(d)(2)(E), the United States must establish by a preponderance of the evidence that: (1) a conspiracy existed; (2) the conspiracy included the declarant and the defendant against whom the statement is offered; and (3) the statement to be introduced was made during the course

15

and in furtherance of the conspiracy. *See Bourjaily v. United States*, 483 U.S. 171 (1987); *United States v. Dickerson*, 238 F.3d 1036, 1049 (11th Cir. 2001).

In determining if a conspiracy existed, the court may consider the coconspirator's statement sought to be admitted as well as other independent evidence. *Bourjaily*, 483 U.S. at 180-81; *United States v. Chestang*, 849 F.2d 528, 531 (11th Cir. 1988). The Court need not make a pretrial determination that the statements are admissible, *see United States v. James*, 590 F.2d 575 (5th Cir. 1979); rather, the Government may assure the court that the statements are connected to a conspiracy and the Court may rule at the close of the Government's case whether the statements are admissible. *See United States v. Hasner*, 340 F.3d 1261, 1275 (11th Cir. 1975). The statements are also admissible even though they were uttered by an uncharged coconspirator as long as the existence of the conspiracy has been established. *United States v. Salisbury*, 662 F.2d 738, 740 (11th Cir.1981).

Statements serving a necessary part of a conspiracy – for example, by concealing it or impeding an investigation – are admissible as coconspirator statements. *See United States v. Blakey*, 960 F.2d 996, 998 (11th Cir. 1992) (citing *United States v. Griggs*, 735 F.2d 1318, 1325 (11th Cir. 1984)). Moreover, a conspiracy for admitting a coconspirator statement need not be the same one for which the defendant is charged. *United States v. Bowe*, 221 F.3d 1183, 1193-94 (11th Cir. 2000).

The Eleventh Circuit applies "a liberal standard in determining whether a statement is made in furtherance of a conspiracy." *Dickerson*, 248 F.3d at 1050 (*quoting*

*United States v. Santiago*, 837 F.2d 1545, 1549 (11th Cir.1988)). This requirement is satisfied if the statement is "designed to promote or facilitate the achievement of the goals of the conspiracy." *United States v. Rivera*, 22 F.3d 430, 436 (2d Cir. 1994). While "[m]ere idle chatter" does not qualify under this standard, the "in furtherance" criteria is satisfied by a wide variety of statements designed to promote the conspiracy, including statements which "provid[e] reassurance to a coconspirator, seek[] to induce a coconspirator's assistance, serv[e] to foster trust and cohesiveness, . . . inform[] coconspirators as to the progress or status of the conspiracy, or . . . prompt[] the listener–who need not be a coconspirator–to respond in a way that promotes or facilitates the carrying out of a criminal activity." *United States v. Tracy*, 12 F.3d 1186, 1196 (2d Cir. 1993). "The statement need not be necessary to the conspiracy, but must only further the interests of the conspiracy in some way. Statements made to solicit membership or participation in the conspiracy and statements explaining the conspiracy to a new member are made in furtherance of the conspiracy." *United States v. Miles*, 290 F.3d 1341, 1351 (11th Cir. 2002) (internal citation omitted).

The government anticipates presenting testimony from victims who will explain, among other things, that they were encouraged to invest with the defendants because they were experts in the financial industry. The government submits such statements were in furtherance of the conspiracy because the evidence will show that these middlemen were active participants in the conspiracy with the defendants.

## Conclusion

The government apologizes to the Court for not having filed this trial brief at an earlier date. The government hopes that should any of the above issues be raised by defense at trial, this brief will become helpful for the Court's consideration of the arguments. In fact, just prior to the government completing this brief, counsel for both defendants filed motions in limine related to the Rule 404(b) issue described herein. *See* Doc. 122, 123.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By: */s/ Tyrie K. Boyer*
   Tyrie K. Boyer
   Assistant United States Attorney
   Florida Bar No. 0124940
   400 N. Tampa Street, Suite 3200
   Tampa, Florida 33602-4798
   Telephone: (813) 274-6000
   Facsimile: (813) 274-6358
   E-mail: tyrie.boyer@usdoj.gov

**U.S. v. ROBERTS AND DAVIS**          **Case No. 8:24-cr-236-VMC-SPF**

<strong><u>CERTIFICATE OF SERVICE</u></strong>

I hereby certify that on June 21, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

> Laura Hastay, Esq.
> Christopher DeLaughter, Esq.

By:    */s/ Tyrie K. Boyer*
        Tyrie K. Boyer
        Assistant United States Attorney
        Florida Bar No. 0124940
        400 N. Tampa Street, Suite 3200
        Tampa, Florida 33602-4798
        Telephone: (813) 274-6000
        Facsimile: (813) 274-6358
        E-mail: tyrie.boyer@usdoj.gov